## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT FLORIDA

|  |  |  |
|---|---|---|
| _____ | ) |  |
| STINGER TEES, INC. d/b/a STINGER | ) |  |
| GOLF, | ) | CASE NO: |
|  | ) |  |
| Plaintiff, | ) | JUDGE: |
| vs. | ) |  |
|  | ) | **JURY TRIAL DEMANDED** |
| LIV GOLF INC., | ) |  |
|  | ) |  |
| Defendant. | ) |  |
| _____ | ) |  |

## <u>COMPLAINT</u>

Plaintiff Stinger Tees, Inc. d/b/a Stinger Golf ("Plaintiff" or "Stinger Golf"), by and through its undersigned counsel, hereby files this Complaint against Defendant LIV Golf Inc. ("Defendant" or "LIV") and alleges as follows:

## PRELIMINARY STATEMENT

1.       Stinger Golf has been a Northeast Ohio company for over 25 years.  Stinger Golf launched its popular 2 1/8" tee in 1998, and today, it manufactures approximately 20 million golf tees per year.  As detailed below, nationwide sporting goods stores, well-known golf clubs, and online retailers sell Stinger Golf products.  Many golf tour professionals use Stinger Golf products.

2.        Despite the prominence of its inherently distinctive and famous STINGER Marks in the golf industry and its prior trademark registrations for the STINGER Marks, LIV willfully and brazenly adopted and is using the *same* STINGER trademark, both as a team name and as a brand to sell competing golf merchandise.  A representative sample of a side-by-side of legitimate Stinger Golf products and Defendant's infringing STINGER products are shown below:



*Legitimate Stinger Golf Product*          *Infringing Stinger Product*

3.      To be clear, Stinger Golf has not and does not approve or authorize LIV's use of the STINGER Marks.  Moreover, LIV and its unauthorized goods and services are likely to cause confusion and create an erroneous association between Stinger Golf and LIV. Stinger Golf brings this lawsuit to maintain control of its brand and reputation, and to protect the significant investment of its time, money, and energy in its brand.

## JURISDICTION AND VENUE

4.      This is an action for trademark infringement in violation of Section 32 of the Lanham Act (15 U.S.C. § 1114(1)(a)); unfair competition in violation of Section 43 of the Lanham Act (15 U.S.C. § 1125(a)(1)(A)); trademark infringement in violation of Florida common law; and unfair competition in violation of Florida common law.

5.      This Court has subject matter jurisdiction over this action under 28 U.S.C. §§ 1331 and 1367 because it involves substantial federal claims arising under the Lanham Act (15 U.S.C. § 1051 *et seq.*) and related state law claims. Defendant's acts of infringement and unfair competition were and are being committed in interstate commerce, including but not limited to via

websites under Defendant's control found at www.livgolf.com and www.stingergc.com (the "Infringing Domains"). This Court has supplemental jurisdiction over Plaintiff's state law claims under 28 U.S.C. § 1267.

6.      Defendant is subject to the personal jurisdiction of this Court pursuant to Section 48.193(1), Florida Statutes, because Defendant operates, conducts, engages in, and carries on business in the State of Florida and because Defendant committed a tortious act within this State. Upon information and belief, Defendant's acts of infringement have been committed within Florida. Upon information and belief, Defendant has marketed, advertised, and offered to sell goods and services under the infringing mark STINGER GC (the "Infringing Mark") within Florida via the Infringing Domains and through nationally publicized golf tournaments and other events in which the Infringing Mark is featured. *See* Fla. Stat. § 48.193(1)(a)(1)-(a)(2).

7.      Defendant is further subject to the personal jurisdiction of this Court pursuant to Section 48.193(2), Florida Statutes, because Defendant engages in substantial and not isolated activity within this State.

8.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this district and because Defendant is subject to the Court's personal jurisdiction

## PARTIES

9.      Plaintiff Stinger Tees, Inc. d/b/a Stinger Golf is a corporation organized and existing under the laws of the State of Ohio, having an office and place of business at 26001 Miles Road, Suite #10, Warrensville Heights, Ohio 44128.

10.    Defendant is a corporation organized and existing under the laws of the State of Delaware, with its principal address in Florida at 600 Brickell Avenue, Suite 1755, Miami, Florida 33131.

## FACTUAL BACKGROUND

### *Plaintiff and the STINGER Marks*

11.    Since at least as early as 1999, the STINGER trademark, by itself and in connection with other words and designs (collectively, the "STINGER Marks"), has been used on and in connection with various golf goods and services, including golf tees, hats, visors, club covers, ball markers and other accessories. Stinger Golf is particularly well-known for its tees, which have become a staple in the golf community for their quality and reliability.

12.    Stinger Golf is a U.S. company that operates its own finishing and distribution facility located in Ohio, where it puts out over 20 million golf tees each year. This in-house finishing operation allows Stinger Golf to maintain rigorous quality control standards and reinforces its reputation as a brand.

13.    Throughout its history, Stinger Golf has offered its goods and services to more than a thousand "green-grass" facilities, meaning those facilities incorporating public and private golf courses, driving ranges, and related offerings. Its customer list includes some of the most celebrated and distinguished golf clubs in the world.

14.    Stinger Golf's specialty performance tees have been sold online and direct to consumers for more than two decades. During this time period, Stinger Golf's products have also been sold at several major off-course retail chains in the United States. Stinger Golf has had nationwide distribution agreements with entities such as Dick's Sporting Goods, Golf Galaxy,

Edwin Watts Golf Shops, and formerly Golfsmith. Stinger Golf also sells its products through a number of large online golf retailers.

15.     In addition to Stinger Golf's direct sales, its products are carried by many of the golf industry's most well-regarded distributors, who each have their own catalogs and expansive customer lists, including both "green-grass" facilities and retail stores.

16.     Stinger Golf also custom manufactures golf tees for many of the top brands in golf who want their own customer-branded tees.  Its custom-manufacturing customers include lauded equipment manufacturers, apparel brands, content creators, and online sellers.

17.     Stinger Golf has a history of loyal patronage by golf tour professionals, including players on the LIV tour.

18.     Stinger Golf has cultivated substantial goodwill in its trademark through the consistent delivery of products manufactured under exacting quality standards. These standards govern every aspect of production, from raw material selection to final inspection, and reflect a relentless commitment to excellence. Stinger Golf's products are not only distinguished by their performance and durability, but also by their premium finishes and consistent quality. This reputation, built over decades, is further reinforced by exceptional customer service and seamless execution—elements that together distinguish Stinger Golf's brand in the marketplace and contribute to its strong consumer recognition and trust.

19.     Stinger Golf has also invested considerable resources, including but not limited to time and money, in the advertisement, promotion, and marketing of Plaintiff's Goods & Services under the STINGER Marks. As a result of these substantial advertising, promotional, and marketing efforts, the STINGER Marks have garnered significant consumer recognition and goodwill, and represent extremely valuable assets. The STINGER Marks have become vital source

indicators that identify the quality of Plaintiff's Goods & Services. For all of the foregoing reasons, Stinger Golf has developed strong common law trademark rights in the STINGER Marks and they represent extremely valuable assets.

20.    In addition to its common law trademark rights, Stinger Golf is the owner of the following United States Trademark Registrations for the STINGER Marks (the "STINGER Registrations"):

| Trademark | Registration Number | Classes/Goods |
|---|---|---|
| STINGER | Reg. No. 3,398,038 | IC 28 - Golf tees |
|  | Reg. No. 4,281,501 | IC 28 - Golf tees |
|  | Reg. No. 6,837,849 | IC 28 - Golf tees<br><br>IC 35 - Retail and wholesale store services featuring golfing equipment and golf gameplay accessories; distributorship services in the field of supplies and equipment sold to golf clubs and country clubs for use by or resale to their customers for golf gameplay, and golf supplies and accessories distributed by the clubs as promotional and merchandising items to promote their courses and businesses; distributorship services in the field of supplies and equipment to golf clubs and country clubs for use in operating their business; retail and wholesale store services featuring customized sports equipment, namely, golf tees, golf pencils, golf-ball markers, divot-repair tools, golf-ball bags, shag bags.<br><br>IC 40 - Custom-manufacturing services for others of promotional, merchandising and novelty items for others, namely, golf tees, golf pencils, golf-ball markers, divot-repair tools, table covers; customized imprinting of designs on the goods of others, namely, golf |

| | | tees, golf accessories, golf pencils, golf ball markers, golf ball mark repair tools |
|---|---|---|

Printouts from the United States Patent and Trademark Office's ("USPTO") online databases of the STINGER Registrations are attached as **Composite Exhibit 1**.

21.     Stinger Golf's federal registrations are *prima facie* evidence of the validity of these marks as well as Stinger Golf's ownership and exclusive right to use these marks in connection with the identified goods. *See* 15 U.S.C. § 1057(b).  In addition, Stinger Golf's right to use the STINGER Marks shown in Reg. Nos. 3,398,038 and 4,281,501 is incontestable pursuant to 15 U.S.C. § 1065.

22.     Given the longstanding, extensive, and continuous use of the STINGER word mark for the past 25 years and an accompanying design mark for almost 14 years, the STINGER Marks are widely recognized by the public as identifying Stinger Golf. The STINGER Marks represent valuable assets of Stinger Golf which it will vigorously protect.

### *Defendant and the Infringing Marks*

23.     More than 25 years after the first products sold under the STINGER Marks entered U.S. commerce, and long after the U.S. Patent and Trademark Office issued the STINGER Registrations, Defendant began using the nearly identical Infringing Mark in the United States (and worldwide) in connection with a team name and various golf merchandise, including competing STINGER brand apparel.

24.     The Infringing Mark identifies one of the 13 teams that participate in Defendant's regular tournaments, specifically, Stinger GC (short for Golf Club). Stinger GC is a four-player South African team including captain Louis Oosthuizen, Dean Burmester, Branden Grace, and Charl Schwartzel.

25.    The Infringing Mark is virtually identical to the STINGER Marks, as shown in the following illustrative examples:

*www.stingergc.com*:



*://shop.livgolf.com/collections/stinger-gc*:



*https://X.com/stingergc_:*



*https://www.instagram.com/stingergc_/?hl=en:*



*https://www.facebook.com/teamstingergc/*:





26.     The U.S. Patent and Trademark office has already refused to register two of Defendant's applications to register STINGER GC as a trademark due to its confusing similarity with the STINGER Marks.

27.     On April 6, 2022, Defendant applied to register the mark STINGER GC for "clothing, namely, t-shirts, shirts, tank tops, jackets, coats, scarves, pants, shorts, skirts, skorts, trousers, sweaters, underwear, belts, and sweatshirts; headwear, namely, hats, caps being hats, visors and bandanas; footwear; socks; all the foregoing relating to golf and commemorating a professional golf team" (Ser. No. 97/349,256). Separately, on April 6, 2022, Defendant applied to register the STINGER GC mark for "entertainment services in the nature of professional golf tournaments, matches, competitions, and exhibitions; providing sports news and information in the field of golf" (Ser. No. 97/349,313).

28.     On August 11, 2022, the USPTO issued a Nonfinal Office Action, refusing Defendant's STINGER GC application for clothing (Ser. No. 97/349,256) for likelihood of confusion with two of the STINGER Marks (Reg. Nos. 3,398,038 and 4,281,501) under Section 2(d) of the Lanham Act, 15 U.S.C. § 1052(d). Specifically, the USPTO noted that Defendant's and Plaintiff's marks convey a "highly similar commercial impression, especially when viewed in the context of the golf-related clothing, headwear, footwear, and sporting goods in which they are used" and "are identical in part in sound and meaning and highly similar in appearance." Additionally, the USPTO noted that the "mere two letters" added at the end, GC, did not mitigate the likelihood of confusion, nor did the fact that one of the STINGER Marks incorporates a design, since "Stinger" remains the dominant element. The USPTO also found that Plaintiff's and Defendant's goods are "closely related." The USPTO issued a final refusal on April 4, 2024. Relevant USPTO correspondence is attached as **Composite Exhibit 2**.

29.     On January 30, 2023, the USPTO, through a different Trademark Examiner, issued a Nonfinal Office Action, refusing Defendant's second STINGER GC application for golf tournament-related services (Ser. No. 97/349,313) for likelihood of confusion with all three of the STINGER Marks (Reg. Nos. 3,398,038, 4,281,501, and 6,837,849) under Section 2(d) of the Lanham Act, 15 U.S.C. § 1052(d). Again, the USPTO noted that Defendant's and Plaintiff's marks are confusingly similar and evoke the same commercial impression, particularly since "GC," which stands for "Golf Club," would have to be disclaimed, leaving STINGER as the dominant element. The USPTO also stated that Plaintiff's and Defendant's goods and services "are complementary goods and services that are often used together or otherwise purchased or encountered by the same purchasers." The USPTO did not find persuasive Defendant's response to the first Office Action, in which Defendant argued, among other things, that the letters "GC" distinguished the marks, that the parties' goods and services would not be encountered by the same purchasers, and that the purchasers are sophisticated. The USPTO issued a final refusal on June 20, 2023. Relevant USPTO correspondence is attached as **Composite Exhibit 3**.

30.     Notwithstanding the USPTO's refusal to register the Infringing Mark and Defendant's resulting knowledge from at least this point forward that the Infringing Mark is confusingly similar to the STINGER Marks, Defendant has used the Infringing Mark to advertise and sell its goods and services in international commerce in willful disregard for Stinger Golf's prior rights. Further, undeterred by the prior refusals, on June 16, 2023, Defendant re-applied to register two stylized versions of the Infringing Mark with the USPTO, again covering apparel and golf tournament-related services (Ser. Nos. 98/046,658 and 98/046,661).

31.     Currently, the Infringing Mark appears prominently on the Infringing Domains as well as on Defendant's account pages on social media platforms, including but not limited to

Instagram,[1] Facebook,[2] X,[3] and TikTok.[4] The Infringing Mark also appears prominently on merchandise sold by Defendant, including but not limited to hats, polo shirts, t-shirts, jackets, sweatshirts, pin flags, and towels. This merchandise is sold and distributed online via the Infringing Domains and upon information and belief at Defendant's tournaments and other events.

32.     Plaintiff notified Defendant that their use of Mark was an act of trademark infringement, yet Defendant continued to use, and is currently using, the Infringing Mark.

33.     From April 4 to 6, 2025, Defendant hosted the LIV Golf Miami tournament at Trump National Doral in Doral, Florida. This high-profile event featured extensive use of the STINGER name and branding, prominently displayed on team uniforms, merchandise, signage, and digital platforms associated with the tournament. The tournament was broadcast nationally and internationally, drawing significant media attention and public viewership. The pervasive use of the Infringing Mark in connection with this event, particularly in the context of golf-related goods and services, has exacerbated consumer confusion and further infringed upon Plaintiff's established trademark rights. This unauthorized use of the STINGER Marks and has caused, and continues to cause, irreparable harm to Stinger Golf's brand and reputation.

34.     Defendants' unauthorized use of the STINGER mark has led to actual confusion, further compounding the harm to Plaintiff's goodwill and reputation. On at least two occasions, individuals familiar with Plaintiff's brand independently inquired whether Plaintiff was affiliated with the professional LIV golf team prominently using the STINGER name, reflecting genuine uncertainty regarding the source or sponsorship of the goods and services bearing the mark. Such

---

[1] Stinger GC (stingergc_), Instagram, https://www.instagram.com/stingergc_/?hl=en [https://perma.cc/732B-MZTY].
[2] Stinger GC, Facebook, https://www.facebook.com/teamstingergc/ [https://perma.cc/V8M5-LT8F]
[3] Stinger GC (stingergc_), X, https://x.com/stingergc_?s=11&t=7irCIah-JlH8NtvzuOalEg [https://perma.cc/D4DR-WUPJ]
[4]     Stinger     GC     (stingergc_),     TikTok,     https://www.tiktok.com/@stingergc_?_t=ZT-8wjhYpvgA0Z&_r=1 [https://perma.cc/8YWF-WUB5

confusion underscores the immediate and ongoing threat to the distinctiveness of Plaintiff's trademark and the public's association of it with Plaintiff's longstanding commitment to quality and reliability.

35.     For the foregoing reasons, Defendant's goods and services provided under the Infringing Mark are directed toward the same class of consumers. Thus, Plaintiff and Defendant are competitors with respect to each other's goods and services.

36.     Defendant's use of an almost identical Infringing Mark will likely cause—and has caused—confusion, mistake, or deception as to the source or origin of Defendant's goods and services. Due to Defendant's use of the Infringing Mark in connection with goods that are similar or identical to many of Plaintiff's goods, consumers will likely believe that Defendant's goods and services are provided by, sponsored by, endorsed by, approved by, licensed by, or in another way legitimately connected to Plaintiff when they are not.

37.     Defendant's actions are unlawful, willful, and performed knowingly with the intent to and result of injuring Plaintiff.

38.     Defendant's continued use, marketing, and promotion of the Infringing Mark will result in the misappropriation of and the profiting off of Plaintiff's goodwill.

39.     As a result of Defendant's conduct, Plaintiff and its brand have been seriously and irreparably harmed. Unless this Court enjoins Defendant's wrongful acts, Plaintiff will continue to suffer irreparable harm for which it has no adequate remedy at law.

## COUNT I:
## FEDERAL TRADEMARK INFRINGEMENT UNDER THE LANHAM ACT (15 U.S.C. § 1114(1)(a))

40.     Plaintiff re-alleges and incorporates by reference the allegations of the preceding paragraphs as though fully set forth herein.

41.     As its first ground for relief, Plaintiff alleges federal trademark infringement under Section 32 of the Lanham Act, 15 U.S.C. § 1114.

42.     Plaintiff and its predecessors in interest have sold goods and/or services under at least one of the STINGER Marks since 1999. They have used at least one of the STINGER Marks continuously in United States commerce since that time.

43.     Plaintiff has used the STINGER Marks continuously in United States commerce long prior to Defendant's earliest use in interstate commerce of the Infringing Mark.

44.     The STINGER Marks are inherently distinctive within the meaning of 15 U.S.C. § 1125(c) and were distinctive long before Defendant's first use of the Infringing Mark.

45.     Plaintiff has invested substantial time, effort, and financial resources promoting the STINGER Marks in connection with the marketing and sale of its goods and services in interstate commerce. As a result, the STINGER Marks, through widespread and favorable acceptance and recognition, have become an asset of substantial value as a symbol of Plaintiff, its craft, its industry knowledge, its quality products, and its goodwill.

46.     Notwithstanding Plaintiff's established rights in the STINGER Marks, including ownership of the STINGER Registrations, Defendant has adopted and is using the Infringing Mark in interstate commerce in connection with the sale of goods and services in the golfing industry. Without Plaintiff's consent, Defendant has used and continues to use the Infringing Mark in the sale, offering for sale, distribution, and advertising of these goods and services, including through the Infringing Domains.

47.     Upon information and belief, Defendant is the owner and operator of, and principally responsible for, the content of the Infringing Domains, including their use of the Infringing Mark.

48.     Defendant has engaged in these infringing activities despite having actual knowledge of Plaintiff's use and ownership of the STINGER Marks.

49.     Defendant's actions are likely to lead the public to conclude, incorrectly, that Defendant's services originate with or are authorized by Plaintiff, which false belief has damaged and will continue to damage Plaintiff.

50.     Upon information and belief, Defendant advertises and offers services for sale using the Infringing Mark with the specific intention of misleading, deceiving, or confusing consumers as to the origin of their services, of trading on Plaintiff's reputation and goodwill, and of disrupting and interfering with Plaintiff's relationships with its customers and potential customers.

51.     Defendant's unauthorized use of the Infringing Mark in interstate commerce as described above constitutes trademark infringement under 15 U.S.C. § 1114.

52.     As a direct and proximate result of Defendant's trademark infringement, Plaintiff has suffered and will continue to suffer loss of income, profits, and goodwill, and Defendant has and will continue to unfairly acquire income, profits, and goodwill.

53.     Defendant's acts of infringement will cause further irreparable injury to Plaintiff if Defendant is not restrained by this Court from further violation of Plaintiff's rights.

54.     Plaintiff has no adequate remedy at law.

**COUNT II:**
**UNFAIR COMPETITION UNDER THE LANHAM ACT (15 U.S.C. § 1125(a)(1)(A))**

55.     Plaintiff re-alleges and incorporates by reference the allegations of the preceding paragraphs as though fully set forth herein.

56.     As its second ground for relief, Plaintiff alleges federal unfair competition under Section 43 of the Lanham Act, 15 U.S.C. § 1125.

57.     Through the Infringing Marks, Defendant is providing goods and services under a mark that is a colorable imitation of Plaintiff's protectable marks, which is likely to cause confusion or mistake and/or to deceive in violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A).

58.     Upon information and belief, Defendant has committed these acts of false affiliation, connection, and association and false origin, sponsorship, and approval, willfully and with full knowledge of Plaintiff's prior use and registration of, and common law rights to, the STINGER Marks.

59.     As a direct and proximate result of Defendant's unfair competition, Plaintiff has suffered and will continue to suffer loss of income, profits, and goodwill, and Defendant has and will continue to unfairly acquire income, profits, and goodwill.

60.     Defendant's acts of unfair competition will cause further irreparable injury to Plaintiff if Defendant is not restrained by this Court from further violation of Plaintiff's rights.

61.     Plaintiff has no adequate remedy at law.

### COUNT III:
### FLORIDA COMMON LAW TRADEMARK INFRINGEMENT

62.     Plaintiff re-alleges and incorporates by reference the allegations of the preceding paragraphs as though fully set forth herein.

63.     As its third ground for relief, Plaintiff alleges that Defendant's actions described herein constitute common law trademark infringement under Florida law.

64.     Plaintiff and its predecessors in interest have sold goods and/or services under at least one of the STINGER Marks since 1999. They have used at least one of the STINGER Marks continuously in Florida commerce since that time.

65.     Plaintiff has used the STINGER Marks continuously in Florida commerce long prior to Defendant's earliest use in interstate commerce of the Infringing Mark.

66.     The STINGER Marks are inherently distinctive and were distinctive long before Defendant's first use of the Infringing Mark.

67.     Plaintiff has invested substantial time, effort, and financial resources promoting the STINGER Marks in connection with the marketing and sale of its goods and services in Florida commerce. As a result, the STINGER Marks, through widespread and favorable acceptance and recognition, have become an asset of substantial value as a symbol of Plaintiff, its craft, its industry knowledge, its quality products, and its goodwill.

68.     Notwithstanding Plaintiff's established rights in the STINGER Marks, Defendant has adopted and is using the Infringing Mark in interstate commerce in connection with the sale of goods and services in the golfing industry, and without Plaintiff's consent, has used and continues to use the Infringing Mark in the sale, offering for sale, distribution, and advertising of these goods and services, including through the Infringing Domains.

69.     Upon information and belief, Defendant is the owner and operator of, and principally responsible for the content of the Infringing Domains, including their use of the Infringing Mark.

70.     Defendant has engaged in these infringing activities despite having actual knowledge of Plaintiff's use and ownership of the STINGER Marks.

71.     Defendant's actions are likely to cause customer confusion and lead the public to conclude, incorrectly, that Defendant's services originate with or are authorized by Plaintiff, which false belief has damaged and will continue to damage Plaintiff.

72.     Upon information and belief, Defendant advertises and offers services for sale using the Infringing Mark with the specific intention of misleading, deceiving, or confusing consumers as to the origin of their services, of trading on Plaintiff's carefully curated reputation and goodwill, and of disrupting and interfering with Plaintiff's relationships with its customers and potential customers.

73.     Defendant's unauthorized use of the Infringing Mark in Florida commerce as described above constitutes trademark infringement under Florida common law.

74.     As a direct and proximate result of Defendant's trademark infringement, Plaintiff has suffered and will continue to suffer loss of income, profits, and goodwill, and Defendant has and will continue to unfairly acquire income, profits, and goodwill.

75.     Defendant's acts of infringement will cause further irreparable injury to Plaintiff if Defendant is not restrained by this Court from further violation of Plaintiff's rights.

76.     Plaintiff has no adequate remedy at law.

## COUNT IV:
## FLORIDA COMMON LAW UNFAIR COMPETITION

77.     Plaintiff re-alleges and incorporates by reference the allegations of the preceding paragraphs as though fully set forth herein.

78.     As its fourth ground for relief, Plaintiff alleges that Defendant's actions described herein constitute common law unfair competition under Florida law.

79.     Plaintiff and its predecessors in interest have sold goods and/or services under at least one of the STINGER Marks since 1999. They have used at least one of the STINGER Marks continuously in Florida commerce since that time.

80.     Plaintiff has used the STINGER Marks continuously in Florida commerce long prior to Defendant's earliest use in interstate commerce of the Infringing Mark.

81.     The STINGER Marks are inherently distinctive and were distinctive long before Defendant's first use of the Infringing Mark.

82.     Plaintiff has invested substantial time, effort, and financial resources promoting the STINGER Marks in connection with the marketing and sale of its goods and services in Florida commerce. As a result, the STINGER Marks, through widespread and favorable acceptance and recognition, have become an asset of substantial value and acquired secondary meaning as a symbol of Plaintiff, its craft, its industry knowledge, its quality products, and its goodwill.

83.     Defendant is using a confusingly similar mark (i.e., the Infringing Mark) to identify similar goods in competition with Plaintiff in the same trade area in which Plaintiff has already established its STINGER Marks.

84.     Upon information and belief, Defendant has committed these acts of false affiliation, connection, and association and false origin, sponsorship, and approval, willfully and with full knowledge of Plaintiff's prior use and registration of, and common law rights to, the STINGER Marks.

85.     As a result of Defendant's actions, consumer confusion as to the source of Defendant's goods or services is likely to occur.

86.     As a direct and proximate result of Defendant's actions, Plaintiff has suffered and will continue to suffer loss of income, profits, and goodwill, and Defendant has and will continue to unfairly acquire income, profits, and goodwill.

87.     Defendant's actions will cause further irreparable injury to Plaintiff if Defendant is not restrained by this Court from further violation of Plaintiff's rights.

88.     Plaintiff has no adequate remedy at law.

## REQUEST FOR RELIEF

WHEREFORE, in consideration of the foregoing, Plaintiff respectfully requests that this Court enter an Order granting the following relief:

a) Entering a judgment that Plaintiff's STINGER Marks are and continue to be infringed by Defendant in violation of 15 U.S.C. § 1114(1)(a);

b) Entering a judgment that Defendant's use of the Infringing Mark and Infringing Domains constitutes unfair competition in violation of 15 U.S.C. § 1125(a)(1)(A);

c) Entering a judgment that Defendant's use of the Infringing Mark and Infringing Domains violates Florida common law trademark infringement law;

d) Entering a judgment that Defendant's use of the Infringing Mark and Infringing Domains violates Florida common law unfair competition law;

e) Preliminarily and permanently enjoining and restraining Defendant and each of its agents, employees, officers, attorneys, successors, assigns, affiliates and any persons in privity or active concert or participation with any of them from using any trademark or domain name formed in whole or part of the term STINGER and any substantially similar marks, trade names, or domain names to market, advertise, promote, distribute or otherwise identify Defendant's services where that designation would create a likelihood of confusion, mistake or deception with Plaintiff's STINGER Marks;

f) Pursuant to 15 U.S.C. §1116(a), directing Defendant to file with the Court and serve on Plaintiff within thirty (30) days after issuance of an injunction, a report in writing and under oath setting forth in detail the manner and form in which Defendant has complied with the injunction;

g) Requiring that Defendant and all others acting under Defendant's authority, at their

cost, be required to remove, disable and/or destroy, as appropriate, all literature, websites, social network pages, advertising, labels and other material in their possession bearing any trademark or domain name formed in whole or part of the term STINGER and any substantially similar marks, trade names, or domain names, after forensically preserving a copy of each as well as all evidence (including all metadata) relating to the creation, adoption, and use of the same;

h) Ordering Defendant to account to Plaintiff for, and disgorge to Plaintiff, all profits it has derived as a result of the unlawful acts complained of above;

i) Awarding Plaintiff actual damages, trebled under 15 U.S.C. §1117, in an amount to be proven at trial;

j) Awarding to Plaintiff all profits received by Defendant from sales and revenues of any kind made as a result of its infringing actions, said amount to be trebled, after an accounting pursuant to 15 U.S.C. §1117;

k) Awarding Plaintiff its attorneys' fees and costs pursuant to 15 U.S.C. §1117, because of the exceptional nature of this case resulting from Defendant's deliberate infringing actions; and

l) Granting Plaintiff such other and further relief as the Court may deem just.

<u>**DEMAND FOR JURY TRIAL**</u>

Plaintiff hereby demands trial by jury on all issues so triable.


Dated: June 2, 2025

/
/
/
/
/

Respectfully submitted,

**BARAKAT + BOSSA, PLLC**
201 Alhambra Circle, Suite 1060
Coral Gables, Florida 33134
Tel (305) 444-3114
Fax (305) 444-3115

By: */s/ Brian Barakat*
**BRIAN BARAKAT**
Florida Bar No. 457220
barakat@b2b.legal
cguzman@b2b.legal
service@b2b.legal

**JOHN M. DIMATTEO**
*(pro hac vice application forthcoming)*
NY Bar No.: 2239473
**DiMatteo & Associates**
279 Little Neck Road
Centerport, NY 11721
Tel (631) 645-3490
John.dimatteo@dimatteoip.com

**JOSEPH SOFER**
*(pro hac vice application forthcoming)*
NY Bar No.: 2352508
**Sofer & Haroun, LLP**
110 West 40th Street, Suite 2001
New York.  NY. 10018
Tel (212) 697-2800
Joesofer@soferharoun.com

*Attorneys for Plaintiff*